# UNITED STATES DISTRICT COURT

for the

Central District of California




UNITED STATES OF AMERICA,

v.

MARIO ALBERT CASTILLO-ORTEGA,

Defendant.

Case No. 5:25-mj-00491

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On July 7, 2025, in Riverside County in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | See attached affidavit |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

HSI Special Agent, Tomas Aguirre
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 22, 2025

Judge's signature

City and state: Riverside, California

Honorable Sheri Pym, U.S. Magistrate Judge
*Printed name and title*

AUSA: Sonah Lee 951-276-6924

## AFFIDAVIT

I, Tomas Aguirre, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and an arrest warrant against Mario Albert CASTILLO-ORTEGA ("CASTILLO") for a violation of 18 U.S.C. § 111(a)(1): Assaulting, resisting, or impeding certain officers or employees.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent with Homeland Security Investigations ("HSI") and have been employed as a Special Agent since December 2019. I am currently assigned to the HSI Assistant Special Agent in Charge Office in Riverside, California.

4. I am a graduate of the Federal Law Enforcement Training Center and have received extensive training in the

investigation of narcotics trafficking, financial crimes, violent offenses, and other violations of federal law. I have participated in hundreds of investigations involving Title 21 (Controlled Substances Act) and Title 18 offenses. I am also cross-designated to enforce federal narcotics laws and have collaborated with the U.S. Drug Enforcement Administration, U.S. Customs and Border Protection and various state and local agencies.

5. I was previously employed as a United States Border Patrol Agent in Santa Teresa, New Mexico, from 2012 through 2019. Through experience as a Border Patrol Agent, I have used articulable facts to detain subjects suspected of illegal activity that led to an arrest or seizure of illegal substances.

6. Throughout my career, I have participated in numerous investigations and have conducted or assisted in the arrests of numerous subjects, conducted interviews with victims, witnesses, suspects, and informants. I have participated in several static and mobile surveillance activities and have assisted in the execution of search warrants. I am familiar with the tactics used by defendants and criminal organizations to smuggle narcotics, evade detection, assault law enforcement officers, and obstruct investigations.

### III. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. ICE ERO Officers Conduct Immigration Enforcement Operation on CASTILLO

8. On July 7, 2025, at approximately 8:39 a.m., HSI was notified by Immigration and Customs Enforcement and Removal Operations ("ICE ERO" or "ERO") – San Bernardino regarding an incident involving CASTILLO. The incident occurred in Corona, California, at approximately 7:15 a.m. during a planned immigration enforcement operation in which the ERO officers attempted to conduct a vehicle stop of the vehicle CASTILLO was driving and take CASTILLO into immigration detention.

9. ERO officers involved were clearly identifiable as federal officers, wearing vests and clothing marked with "POLICE/ERO," and their unmarked vehicles were outfitted with police equipment to include red and blue lights with sirens. ERO officers were conducting an immigration enforcement operation in which CASTILLO was identified as the target.

10. ERO officers had previously seen CASTILLO near his suspected residence at 1144 Circle City, Apt. 10, Corona, California ("SUBJECT RESIDENCE") while conducting surveillance near the SUBJECT RESIDENCE. According to ERO officers, CASTILLO walks with a distinctive limp, which he suffered from a work-related injury.

11. On July 7, 2025, ERO officers established surveillance around the SUBJECT RESIDENCE at approximately 5:30 a.m. At approximately 7:00 a.m., ERO officers positively identified CASTILLO walking outside of the apartment complex of the SUBJECT RESIDENCE.

12. ERO officers stated CASTILLO walked to a white Ford Astro-star bearing California License plate 6Z44202 ("SUBJECT VEHICLE"), parked on Circle City Drive, and got into the driver seat. An unidentified male also got into a different vehicle in the assigned parking spot for the SUBJECT RESIDENCE and moved the vehicle by parking it on the street. At this time, CASTILLO reversed the SUBJECT VEHICLE into the assigned parking spot of the SUBJECT RESIDENCE. Both individuals were observed loading items into the SUBJECT VEHICLE, and a short time later, CASTILLO was seen getting into the driver seat of the SUBJECT VEHICLE, while the unidentified male got into the front passenger seat of the SUBJECT VEHICLE.

13. At approximately 7:13 a.m., CASTILLO drove away in the SUBJECT VEHICLE, traveling westbound on Circle City Drive and making a southbound turn onto Rimpau Avenue. ERO Officers began following CASTILLO away from the SUBJECT RESIDENCE in their unmarked government vehicles.

**B.   ERO Officers Attempt to Pull Over CASTILLO**

14. At approximately 7:15 a.m., a government owned vehicle driven by ERO Officer Muhammad Toni and occupied by ERO Officer Daisy Roman in the front passenger seat, was driving parallel to the SUBJECT VEHICLE on the SUBJECT VEHICLE's driver side in the median/turning lane, and another vehicle driven by ERO Officer Miguel Nilo was positioned behind the SUBJECT VEHICLE. While ERO Officer Toni's vehicle was positioned in the median/turning lane on the driver side of the SUBJECT VEHICLE, both vehicles

then activated their emergency equipment in an attempt to conduct a vehicle stop on the SUBJECT VEHICLE.

### C. Castillo Drove His Car into ERO Officers' Car

15. After ERO officers activated their emergency lights, it seemed to Officer Toni that CASTILLO initially slowed down and began moving over to the bike lane on CASTILLO's right side as if he intended to stop in response to ERO officers' attempt to pull him over. To Officer Toni's recollection, then CASTILLO sped up and immediately swerved into the vehicle occupied by Officer Toni and Officer Roman while they were traveling approximately 25-30 miles per hour in the median/turning lane.

16. After being struck by the SUBJECT VEHICLE, Officer Toni himself swerved to avoid getting struck again, and avoid being pushed into the other side of the lane. There was no oncoming traffic at this time, however.

17. To Officer Roman's recollection, CASTILLO did not initially slow down nor attempt to move over to the bike lane. In response to the officers' attempt to pull him over, CASTILLO turned his car to the left to swerve into their government vehicle in the next lane over.

18. To Officer Nilo's recollection, Officer Nilo observed CASTILLO slow down and move his vehicle to toward the bike lane before turning his vehicle to the lane left of his lane to strike Officer Toni and Roman's government vehicle, as if he were trying to flee from them by pushing them away.

19. CASTILLO struck the government owned vehicle with the SUBJECT VEHICLE, damaging the passenger side mirror, front wheel

5

and scraping the passenger side door of the government vehicle, as pictured below:






20. Officers observed CASTILLO swerving from right to left as if to prevent the officers from getting in front of CASTILLO. CASTILLO then made an immediate right turn, westbound into a

6

side street from Rimpau Avenue. On that street in a residential neighborhood, officers observed CASTILLO continue to swerve from left to right taking over the entire street, for some distance.

21. ERO Officers did not pursue CASTILLO but instead saw that he was traveling in the direction of the SUBJECT RESIDENCE. ERO Officers Toni and Roman went back to the SUBJECT RESIDENCE. As they arrived inside the apartment complex parking area, both officers observed CASTILLO park and leave the SUBJECT VEHICLE running, while he and the unidentified male ran toward the door of the SUBJECT RESIDENCE. Several residents came out of their apartments and began forming a crowd in the parking area of the apartment complex. ERO Officers departed shortly after CASTILLO entered his residence to avoid conflict with apartment residents.

## IV. CONCLUSION

22. For all of the reasons described above, there is probable cause to believe that CASTILLO committed a violation of 18 U.S.C. § 111(a)(1), assault on a Federal Officer.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 22nd day of
July 2025.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE

7